CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

DEC 28 2007

JOHN F. CORCORAN, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| CASSIDY ARNOLD, a Minor )<br>By and Through Her Natural Mother )<br>and Legal Guardian, TINA R. HILL, )<br>     )<br>Plaintiff, )<br>     )<br>v. )<br>     )<br>HARTFORD LIFE INSURANCE CO., )<br>     )<br>Defendant. ) | Civil Action No. 7:07CV00093<br><br>**MEMORANDUM OPINION**<br><br>By: Hon. Glen E. Conrad<br>United States District Judge |

This matter involves a claim, under the provisions of the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001, et seq. ("ERISA"), for mandatory and voluntary benefits under the Accidental Death & Dismemberment Policy ("the Policy") issued by the defendant, Hartford Life Insurance Co. ("Hartford"), to Volvo Trucks North America, Inc. ("Volvo"), the employer of the plaintiff's deceased father. The case is before the court on plaintiff's motion for full and fair *de novo* hearing on the merits or opening of administrative record. For the reasons set forth below, the plaintiff's motion will be denied.

## FACTUAL BACKGROUND

The plaintiff's father, Arlys Arnold, worked for Volvo at its plant in Dublin, Virginia from May 19, 2004 until the date of his death on April 17, 2005. The Policy was sponsored by Volvo and generally covered the employees at the Dublin plant, including those covered by the 2005 Collective Bargaining Agreement ("2005 CBA") between Volvo and The International Union, United Automobile Aerospace and Agricultural Implement Workers of America (UAW), and Local 2069 of The International Union, United Automobile Aerospace and Agricultural

Implement Workers of America (UAW). Arlys Arnold was a member of the union, however the parties dispute whether the 2005 CBA was actually in effect with regard to benefits as described in Exhibit B to the 2005 CBA, including Accidental Death and Dismemberment ("AD&D") benefits, on the date Arlys Arnold died.

The Policy included two types of coverage: (1) a mandatory plan in which the principal sum would be 55.5% of the employee's annual basic rate of pay and (2) a voluntary plan in which employees could apply for an additional principal sum of up to $300,000. The Policy provides as follows:

> If a Covered Person's injury results in any of the following losses within 365 days after the date of accident, we will pay the sum shown opposite the loss.
>
> . . .
>
> For Loss of:
> Life ...................................................... The Principal Sum

See Defendant's Memorandum in Opposition to Plaintiff's Motion for Full and Fair De Novo Hearing on the Merits or Opening of Administrative Record ("Memorandum in Opposition"), Exhibit A, p. HL000020. Injury is defined as follows:

> <u>Injury</u> means bodily injury resulting directly and independently of all other causes from accident which occurs while the Covered Person is covered under this policy. Loss resulting from:
>     a)    sickness or disease, except a pus-forming infection which occurs through an accidental wound; or
>     b)    medical or surgical treatment of a sickness or disease;
> is not considered as resulting from injury.

See Memorandum in Opposition, Exhibit A, p. HL000015. The term "accident" is not defined in the Policy. The Policy also contains the following relevant exclusion:

> This policy does not cover any loss resulting from:

>    1. intentionally self-inflicted Injury, suicide or attempted suicide, whether sane or insane; . . .

See Memorandum in Opposition, Exhibit A, p. HL000019. In addition to the mandatory benefits for which he was automatically eligible, Arlys Arnold requested the voluntary accidental death and dismemberment benefits available under the Policy in the amount of $300,000, and named Cassidy Arnold, his minor daughter, as the primary beneficiary.

On April 17, 2005, Arlys Arnold attended a party in Max Meadows, Virginia. Upon leaving the gathering, Arlys Arnold drove his pickup to a grocery store located nearby. At the grocery store, he met James Dalton and apparently borrowed Dalton's motorcycle. After leaving the store on the motorcycle, Arlys Arnold was involved in an accident whereby he left the road and struck a tree. Because of the injuries sustained in the accident, Arlys Arnold died at the scene of the accident.

On or about May 2, 2005, Tina Hill, the mother of Cassidy Arnold, met with a representative of Volvo with regard to Arlys Arnold's death benefits. On that date, she completed claim forms for AD&D benefits under the terms of the Policy on behalf of her daughter. On August 23, 2005, Hartford denied the plaintiff's claims. In support of its decision, Hartford noted that Arlys Arnold's blood alcohol level had been 0.18% and that, based upon such a level of intoxication, he should have reasonably foreseen that driving "may result in severe injury or death, even if death was not intended." See Memorandum in Opposition, Exhibit C, p. HL000064. Hartford then stated that:

> The assumption of a known risk by the insured does not constitute an "Accident" under the terms of the Policy, and the result of that assumption, death in this circumstance, does not constitute a covered "injury" under the terms of the Policy.

Id. Hartford also stated, as a second basis for its denial, that: "[t]he 'self-inflicted' injury

exclusion is applicable since Mr. Arnold's own volitional act of driving a motorcycle while legally intoxicated caused the injury." Id. According to the letter sent to the plaintiff, Hartford based its determination primarily upon the following information included in the administrative record: the certificate of death from the Commonwealth of Virginia, the Commonwealth of Virginia police crash report, and the Division of Forensic Science certificate of analysis. See Memorandum in Opposition, Exhibit C, p. HL000063.

On September 28, 2005, Hill appealed Hartford's decision denying her claim on behalf of Cassidy Arnold. Hartford confirmed its earlier decision by letter dated October 31, 2005. On December 25, 2005, counsel for Hill sent a letter to Hartford stating that he intended to present additional information with regard to the plaintiff's claim. Hartford responded that the administrative record was final and that it would not consider any additional information or undertake any additional review of the claim.

On January 23, 2007, Hill, through counsel, submitted several additional pieces of evidence to Hartford including: four affidavits from individuals who were allegedly in contact with Arlys Arnold shortly before his death and who stated that he did not appear to be intoxicated; a letter from the individual who performed the test on the decedent's blood stating that he did not know from where he had extracted the blood; and a letter from an expert with regard to the testing of Arlys Arnold's blood. On January 29, 2007, Hartford returned the additional evidence to the plaintiff's counsel again stating that she had already exhausted her administrative remedies and that they would accept no further evidence. The plaintiff then filed the instant action claiming that Hartford based its denial upon insufficient evidence and that the denial was contrary to the terms of the policy.

## PROCEDURAL HISTORY

The court entered its usual scheduling order for an ERISA case involving an abuse of discretion standard of review. The plaintiff filed a request for changes to the proposed scheduling order claiming that she was entitled to discover additional evidence under a *de novo* standard of review or that she was entitled to a full trial on the merits based upon certain alleged violations of ERISA notice requirements on the part of Hartford. Hartford responded that this case should be subject to review under the abuse of discretion standard and that the plaintiff should not be permitted to engage in additional discovery. Both parties relied upon the language of the Policy. The plaintiff's discovery motion was referred to Magistrate Judge Michael F. Urbanski for a hearing and decision.

In an opinion entered on May 9, 2007, the magistrate judge first noted that the plaintiff's objections to the scheduling order focused on an effort to open the administrative record to facilitate a *de novo* review. The magistrate judge noted that a *de novo* standard of review is appropriate only when the plan does not confer discretionary authority to determine eligibility for benefits and to construe the language of the plan. Hartford had argued that the plan did confer discretion based upon the language of the Policy, however the magistrate judge found that no Policy language appeared to give Hartford the power to construe disputed or doubtful terms or to resolve disputes over benefits eligibility and that the *de novo* standard may apply in this case. The magistrate judge then permitted certain limited discovery regarding Hartford's consideration of the plaintiff's claim and the manner in which the "foreseeability-based" denial was handled. The magistrate judge also permitted some limited discovery into the medical issue raised by the

plaintiff with regard to the proper evaluation of the decedent's blood alcohol level. Neither party filed any objections to the opinion of the magistrate judge.

On August 21, 2007, the plaintiff filed this motion for full and fair *de novo* hearing on the merits or opening of the administrative record. The plaintiff noted that she had served discovery on the defendant in this case pursuant to the order of the magistrate judge on her earlier motion for changes to the scheduling order. The plaintiff then asserted that the defendant had objected to certain requests and that she expected Hartford to object to the taking of certain depositions and further written discovery in the future. In its response in opposition to the plaintiff's motion, Hartford, for the first time, produced the Volvo Welfare Benefits Plan and relied on the language of that document, not the Policy, in its response.

A hearing on the plaintiff's motion took place on September 25, 2007. At the hearing, it became apparent that there was a factual dispute regarding whether the 2005 CBA was effective on the date of the decedent's death thus making Arlys Arnold a covered person under the Volvo Welfare Benefit Plan. The court ordered Hartford to submit an affidavit to resolve this factual dispute. Hartford has since submitted the relevant affidavit, the plaintiff has had the opportunity to respond to the affidavit, and Hartford has filed its final response. Therefore, the plaintiff's motion is now ripe for decision.

## DISCUSSION

1. **The Controlling Plan Documents**

As previously stated, the plaintiff only became aware of the Volvo Welfare Benefit Plan document shortly before the hearing on this motion. Prior to that time, and in the proceedings before the magistrate judge, Hartford had relied upon the Policy exclusively as the governing

document under ERISA. During the course of briefing the instant motion, Hartford for the first time held out the Volvo Welfare Benefit Plan as the governing document and now contends that the Policy is simply the insurance contract between Volvo and the insurer and that the Volvo Welfare Benefit Plan is the relevant plan for purposes of ERISA. Notwithstanding Hartford's previous reliance on the Policy, the court agrees that the Policy does appear to be simply an insurance contract and that the Volvo Welfare Benefit Plan appears to be the proper document to consider under ERISA.

The Volvo Welfare Benefit Plan states, however, that certain employees are not covered by the plan including:

> D. Employees who are members of a collective bargaining unit covered by a collective bargaining agreement with an Employer unless the collective bargaining agreement provides for participation in the Plan

See Memorandum in Opposition, Exhibit B § 3.4. Because Arlys Arnold was a member of a collective bargaining unit, he would have been covered by the Volvo Welfare Benefit Plan only if the relevant collective bargaining agreement provided for his participation in that plan.

The 2005 CBA states that it is effective from February 1, 2005 through January 31, 2008 and that benefits, including AD&D coverage, are provided by Volvo under the 2005 Insurance Program as amended by the 2005 CBA. Appendix B to the 2005 CBA more specifically describes the Welfare Benefit Program and indicates that the employees covered therein are also covered under the Volvo Welfare Benefit Plan. The affidavit submitted to the court of Kenneth A. Blythe, associate general counsel of Volvo Trucks North America, supports an effective date of AD&D coverage of February 1, 2005. In his affidavit, Mr. Blythe notes that statements he previously made to the plaintiff's counsel to the effect that the 2005 CBA, as it related to AD&D

7

coverage, was not in effect at the time of Arlys Arnold's death were made in error. Mr. Blythe then goes on to state that the 2005 CBA was indeed effective on February 1, 2005 and included Appendix B which sets forth the AD&D coverage.

The plaintiff asserts, however, that the 2005 CBA as it related to benefits such as AD&D coverage was not, in fact, effective as of February 1, 2005 but that portion of the agreement became effective only on or around June 1, 2005, after Arlys Arnold's death. In support of that contention, the plaintiff has submitted the affidavit of Tim Bressler, the assistant director of the UAW Heavy Truck Department. In that affidavit, Mr. Bressler states that he was familiar with the negotiations surrounding the 2005 CBA involving changes to the previously effective 1999 collective bargaining agreement and that all of the benefits described in Appendix B to the agreement, including AD&D coverage, were not effective until June 1, 2005. According to the plaintiff, because the 2005 CBA was not in effect at the time of Arlys Arnold's death and the 1999 collective bargaining agreement did not provide for participation in the Volvo Welfare Benefit Plan, the Policy was the relevant plan for purposes of ERISA, not either collective bargaining agreement.

The court finds, however, that the 2005 CBA specifically states that it became effective on February 1, 2005. The affidavit of Mr. Blythe provides a satisfactory explanation with regard to the error he made in his previous statements to counsel for the plaintiff that the benefits coverage provided for in that agreement was not in effect until some later date. The court does not find it appropriate to consider evidence outside the four corners of the agreement itself, such as that submitted in the affidavit of Mr. Bressler, when the written agreement between the parties is explicit and unambiguous with regard to the effective dates. Rosania v. Rosania, 108 N.C.

8

App. 58, 61 (1992); Centex Constr. v. Acstar Ins. Co., 448 F. Supp.2d 697, 711 (E.D. Va. 2006). Therefore, the court finds that the 2005 CBA, including Exhibit B, was in effect on the date of Arlys Arnold's death, that Mr. Arnold was a covered person under the Volvo Welfare Benefits Plan, and that these are the relevant documents to consider in order to evaluate the plaintiff's claims under ERISA.

2.  **The Standard of Review**

In her motion, the plaintiff is asking the court to permit her to obtain discovery of material outside the administrative record and to present any relevant information obtained to the court, however such information may be considered only when a court is examining a claim determination under the *de novo* standard of review. Bernstein v. CapitalCare, Inc., 70 F.3d 783, 788-89 (4th Cir. 1995); Quesinberry v. Life Ins. Co. of North America, 987 F.2d 1017, 1026-27 (4th Cir. 1993). Therefore, it is necessary for the court to first determine the standard of review that should apply in this case.

Generally, in determining the appropriate standard of review in a case involving an employee welfare benefit plan covered by ERISA, a court must decide whether the language of the plan grants the plan administrator discretion to determine the claimant's eligibility for benefits or to construe the terms of the plan. Eckelberry v. ReliaStar Life Ins. Co., 469 F.3d 340, 343 (4th Cir. 2006). If the plan does confer such discretion, the court will review a decision to deny benefits for abuse of discretion. Id. If the plan does not clearly grant such discretion to the insurer, the standard of review is *de novo*. Feder v. Paul Revere Life Ins. Co., 228 F.3d 518, 524 (4th Cir. 2000).

9

In this case, the language in the Volvo Welfare Benefits Plan ("the Plan") expressly grants Hartford, as the Claims Administrator, "the discretionary power and authority to make factual findings and construe the terms of the Plan for the purpose of reviewing and deciding claims hereunder." See Memorandum in Opposition, Exhibit B § 9.3. With such an express creation of discretionary authority, the abuse of discretion standard would generally apply. See Feder, 228 F.3d at 522; Ellis v. Metro. Life Ins. Co., 126 F.3d 228, 232 (4th Cir. 1997) (finding that the abuse of discretion standard applied where the plan vested the fiduciary with "discretionary authority to interpret the terms of the plan and to determine eligibility for and entitlement to plan benefits in accordance with the terms of the plan").

Nevertheless, "when a plan administrator with discretion faces a conflict of interest such that its decision to award or deny benefits impacts its own financial interests," the court should apply a modified abuse of discretion standard. Carolina Care Plan, Inc. v. McKenzie, 467 F.3d 383, 386 (4th Cir. 2006). In this case, Hartford does indeed face such a conflict of interest as it is both the insurer as well as the claim administrator under the Plan. Therefore, Hartford's decision would be subject to a heightened level of scrutiny and would be upheld only if it is reasonable. Id. at 387.

The plaintiff argues, however, that Hartford has failed to follow certain claims procedures required by the terms of the 2005 CBA and ERISA and that this failure should result in the utilization of a *de novo* standard of review rather than a modified abuse of discretion standard. Therefore, the court must next determine whether the defendant has, in fact, failed to follow any required claims procedures and if so, what effect any such failure should have on the appropriate standard of review.

Certain claims procedures are required in accordance with ERISA and the regulations implemented by the Department of Labor. Specifically, 29 U.S.C. § 1133 provides as follows:

In accordance with regulations of the Secretary, every employee benefit plan shall -

(1) provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant, and

(2) afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim.

The relevant regulations are found at 29 C.F.R. § 2560.503-1 and set forth certain minimum requirements for claims procedures pertaining to claims for benefits by participants and beneficiaries. 29 C.F.R. § 2560.503-1(a). The failure to establish and follow the minimum claims procedures as required by the regulation would result in a finding that "a claimant shall be deemed to have exhausted the administrative remedies available under the plan and shall be entitled to pursue any available remedies under section 502(a) of the Act on the basis that the plan has failed to provide a reasonable claims procedure that would yield a decision on the merits of the claim." 29 C.F.R. § 2560.503-1(l). The plaintiff points to this subsection in support of her contention that any procedural irregularity should require an evaluation of the claim under the *de novo* standard of review.

In support of this position, the plaintiff points to certain comments by the Department of Labor during the rulemaking process when this subsection was amended during 2000.[1] For example, the consequences of a failure to establish and follow reasonable claims procedures were commented upon as follows:

---

[1] The regulation actually applied to claims filed on or after January 1, 2002. 29 C.F.R. § 2560.503-1(o).

> The Department believes it is important to make clear that the claims procedure regulation prescribes the minimum standards for an administrative claims review process consistent with ERISA. Accordingly, a failure to provide the procedures mandated by the regulations effectively denies participants and beneficiaries access to the administrative review process mandated by the Act. It is the view of the Department that claimants should not be required to continue to pursue claims through an administrative process that fails to meet the minimum standards of the regulation. At a minimum, claimants denied access to the statutory administrative review process should be entitled to pursue claims under section 502(a) of the Act. In addition, such claimants should be entitled to a full and fair review of their claims in the forum in which they are first provided adequate procedural safeguards. The proposal therefore incorporates a new paragraph (i)[2] that would specify more clearly the consequences that the Department believes flow from a failure to provide procedures that meet the minimum regulatory standards. . . . It is the Department's view that, in such a case, any decision that may have been made by the plan with respect to the claim is not entitled to the deference that would be accorded to a decision based upon a full and fair review that comports with the requirements of section 503 of the Act.

63 Fed. Reg. 48397 (Sept. 9, 1998). From this language, and similar comments made at other points during the rulemaking process, the plaintiff contends that strict compliance with the procedures set forth in the regulations is now required and that deviations from those procedures will result in decisions that should be afforded no deference by a district court under the *de novo* standard of review. Some district courts have found that, in light of the Department of Labor's commentary regarding the new regulations, no substantial compliance exception should be read into the regulations. See, e.g., Reeves v. Unum Life Ins. Co. of America, 376 F. Supp. 2d 1285, 1294 (W.D. Okla. 2005) (holding that the substantial compliance doctrine did not apply when a fiduciary failed to issue a timely decision on claimant's appeal).

In Goldman v. Hartford Life & Accident Ins. Co., 417 F. Supp. 2d 788, 804 (E.D. La. 2006), however, the Court noted that amended section 2560.503-1 "simply does not speak to the issue of the standard of review." As a result, the Court held that the Department of Labor's

---

[2] The paragraph (i) referred to in the comment ultimately became paragraph (l).

12

comments were not entitled to deference as there was no ambiguity in the regulation and "nothing in the text of the rule itself purports to prescribe a standard of judicial review." 417 F. Supp. 2d at 803-804. Instead, the Court found only that courts should continue "to look to the record to determine whether a claims decision that does not comply with section 2560.503-1 is entitled to any judicial deference." Id. at 805. The Court then turned to the record of the claim in that case and found that, although the fiduciary had clearly failed to dispose of the claimant's second appeal in violation of the regulations, the fiduciary had issued a reasoned decision on a prior appeal and that there was no "concern about the overall adequacy of the decision-making process." Id. Therefore, the Court proceeded to review the denial of the claim under the abuse of discretion standard. Id.

The court finds the reasoning in Goldman persuasive. In the Fourth Circuit, strict compliance with the ERISA regulations has not been the standard; instead, what is generally required is substantial compliance with those regulations. See Brogan v. Holland, 105 F.3d 158, 165 (4th Cir. 1997). There is no language in 29 C.F.R. § 2560.503-1(l) which purports to establish the standard of review or to suggest that the substantial compliance test is no longer appropriate when examining the circumstances of a particular case.[3] Therefore, the court finds that the substantial compliance doctrine still applies when examining procedural irregularities committed by a fiduciary in the claims process.[4] When considering whether an ERISA fiduciary

---

[3] While the Fourth Circuit has not specifically addressed this issue, it appears that other Circuits, while not specifically referencing the amended regulations cited by the plaintiff here, continue to apply the substantial compliance doctrine when examining ERISA claims. See, e.g., Wenner v. Sun Life Assur. Co. of Canada, 482 F.3d 878, 883 (6th Cir. 2007); Wade v. Hewlett-Packard Development Co. LP Short Term Disability Plan, 493 F.3d 533, 539 (5th Cir. 2007); Forrester v. Metropolitan Life Ins. Co., 232 Fed. Appx. 758, 760 (10th Cir. 2007).

[4] The court also notes that, in the Fourth Circuit, the typical remedy when a fiduciary is found to have committed serious procedural irregularities that do not demonstrate substantial compliance with the ERISA guidelines is to remand the claim to the plan administrator for a full and fair review under the correct procedures,

has substantially complied with the regulations, the most important factor to consider is whether the record in a particular case creates a concern regarding the overall adequacy and integrity of the fiduciary's decision making process. Goldman, supra, 417 F. Supp. 2d at 805 (E.D. La. 2006) See also, McGarrah v. Hartford Ins. Co., 234 F.3d 1026, (8th Cir. 2000) (finding that a court "may infer that the trustee did not exercise judgment when rendering [its] decision" in only a limited number of circumstances, including "where procedural irregularities are so egregious that the court has a total lack of faith in the integrity of the decision making process").

Turning to the claims procedures employed in the instant case, the plaintiff asserts that Hartford failed to (1) grant her a full 180 day appeal period, (2) provide notice of or grant an additional voluntary appeal, and (3) accept additional information submitted by her in an attempt to amend or supplement her appeal. Only the second alleged procedural error could be construed as a violation of the relevant regulations, i.e. the failure to provide notice of the additional voluntary appeal. See 29 C.F.R. § 2560.503-1(j)(4).

The voluntary appeals process is set forth in Exhibit B to the 2005 CBA and permits a claimant, upon the denial of her appeal, to request assistance from the UAW in an attempt to settle the claim, first informally and finally through binding arbitration. Although the regulations require that a claimant receive a notice describing any voluntary appeal procedures offered by the plan when she is notified of the denial of her appeal, the October 31, 2005 letter sent by Hartford

---

rather than to heighten the standard of review. Berry v. Ciba-Geigy Corp., 761 F.2d 1003, 1006 n.4 (4th Cir. 1985); Wertheim v. Hartford Life Ins. Co., 268 F. Supp. 2d 643, 664 (E.D. Va. 2003). Although a remand may cause additional delay, "it fosters the strong policy favoring the internal administrative resolution of ERISA claims and ensures that plaintiff receives all of the procedural protections to which he is entitled under the regulations." Wertheim, 268 F. Supp. 2d at 664.

14

to Tina Hill did not include such a notice. See Memorandum in Opposition, Exhibit F. Therefore, it initially appears that Hartford failed to comply with the regulations.

Hartford, however, disputes that it was required to notify Ms. Hill of the voluntary appeal procedures in the first instance. Hartford notes that those procedures are included only in Exhibit B to the 2005 CBA, not in the Plan. The defendant then contends that, because it was not a party to the 2005 CBA and was not aware of the voluntary appeal procedures, those procedures were not part of the Plan and no notification to the plaintiff was required.

The court first notes that Hartford was not aware even of the existence of the Plan until a late stage in this litigation. In fact, in its initial answer and in the submissions to the magistrate judge on this issue, Hartford put forth only the Policy as the appropriate plan document. Therefore, it is somewhat inconsistent for Hartford to now argue that it should be bound by the terms of the Plan, to which it was not a party and of which it was not aware during the decision making process for the plaintiff's claim, but not by the terms of the 2005 CBA which states that it is the summary plan description for the union members, including Arlys Arnold. However, the court is constrained to agree that this inconsistency, and Hartford's failure to marshal its documents in a competent fashion before making its arguments to the court, is not issue dispositive.

When the language in a summary plan description is inconsistent with the Plan language, the summary plan description will typically control. Aiken v. Policy Management Systems Corp., 13 F.3d 138, 140 (4th Cir. 1993). The court notes, however, that the copy of the 2005 CBA with which it has been provided is not entirely clear with regard to whether this particular summary plan description should control in this case. The language is incomplete and certain

15

appendices appear to indicate that, where the summary plan description and the Plan document may vary in their description of the Plan, the Plan document should control. Furthermore, Section 10.10 of the Plan states that "[i]n case of conflict between this document and any other writing or evidence, the terms of this document shall govern."

Nevertheless, the court finds that the plaintiff is entitled to no relief with regard to her claim for lack of notice of the voluntary appeal procedures regardless of whether the summary plan description controls or the Plan controls. If the latter, the plaintiff was entitled to no notice of any voluntary appeal procedures because no such procedures were included in the Plan. Thus, Hartford both substantially and strictly complied with the procedures specified in the regulations. Even if the summary plan description controls, however, the plaintiff has failed to demonstrate either reliance upon or prejudice stemming from Hartford's failure to provide notification of the voluntary appeal procedures.

Before a claimant may obtain any relief with regard to a claim asserting a faulty plan description, she must demonstrate "'some significant reliance upon, *or* possible prejudice flowing from' the lack of notice of an accurate description of the terms of the plan." Gable v. Sweetheart Cup Co., Inc., 35 F.3d 851, 859 (4th Cir. 1994) (quoting Aiken v. Policy Mgmt. Sys. Corp., 13 F.3d 138, 141 (4th Cir. 1993)) (emphasis in original). In order to show prejudice, a plaintiff must demonstrate that she was likely to have been harmed because of the discrepancy. Burke v. Kodak Ret. Income Plan, 336 F.3d 103, 113 (2nd Cir. 2003).

There is no evidence that the plaintiff relied upon or was even aware of the procedures included in Exhibit B of the 2005 CBA and not mentioned in the Plan. Furthermore, there is no evidence of a likelihood of harm to the plaintiff in this case. Although the plaintiff contends that

16

she was attempting to pursue her claim and was prevented from doing so, she was primarily attempting to present additional evidence in the claims process. The voluntary appeal process contains no language which would have permitted her to present any additional evidence, and would have been based only upon the legal documents governing the Plan and the information previously submitted to Hartford. The evidence currently before the court indicates that Hartford properly considered the plaintiff's claim in light of the claims procedures set forth in the regulations, provided her with the opportunity to appeal its initial denial, and notified her that she had the opportunity to provide additional documentation of her claim at that time. Hartford also timely sent her a notice that her appeal was denied including a detailed discussion of the reasons for the denial and informing her that she had the right to bring an action in federal court. Therefore, nothing in the record currently before the court creates a concern regarding the overall adequacy and integrity of the fiduciary's decision making process with regard to the appeals process or indicates that the plaintiff would have likely received a more favorable determination had she been entitled to pursue the voluntary appeal procedures.

The plaintiff also contends that Hartford failed to grant her the full 180 day appeal period set forth in Exhibit B to the 2005 CBA. The regulations require only that a fiduciary provide a claimant with at least 60 days following an adverse determination to bring an appeal. 29 C.F.R. § 2560.503-1(h)(2)(I). Section 9.11(B) of the Plan specifically provides for a 60 day appeal period, and the letter sent to the plaintiff by Hartford initially denying her claim also set forth a 60 day deadline for any appeal. Therefore, again, the plaintiff's contention depends upon a finding that the summary plan description as set forth in Exhibit B to the 2005 CBA controls, as described <u>supra</u>. Even if the 180 day period applied in this case, however, the plaintiff has failed

17

to show either reliance or prejudice stemming from the application of the shorter 60 day appeal period to her claim. The plaintiff has failed to demonstrate that she was either aware of or tried to take advantage of a 180 day appeal period. Ms. Hill sent Hartford a letter requesting an appeal of the initial denial just over a month after the date of the initial denial letter, well short of even the 60 days provided. Furthermore, the plaintiff received the full opportunity to pursue her appeal. Hartford reviewed her claim on appeal independently of the first review and provided her the opportunity to provide additional information for the appeal process. The fact that the plaintiff later obtained counsel and attempted to provide Hartford additional information after her appeal had already been denied does not indicate that the previous appeal procedures did not provide for a full and fair review of her claim.

The plaintiff also asserts that Hartford failed to accept additional information submitted by her in an attempt to amend or supplement her appeal. Section 9.11(B) does provide that the fiduciary may permit an appeal to be amended or supplemented upon good cause shown. Nevertheless, the plaintiff has failed to show that she was aware of this provision. Furthermore, the plaintiff was not prejudiced by Hartford's decision not to accept additional information after it had reached a final decision on her appeal. Section 9.11(B) provides only that the fiduciary *may* permit an amendment or supplement to an appeal, thus giving discretionary authority to the fiduciary. In addition, Section 9.11(D) provides that the decision on appeal shall be final and binding on all the parties. Hartford simply had no duty to permit the plaintiff to submit any additional information after it had reached a final decision with regard to the appeal of the denial of her claim.

18

Because the plaintiff has shown no prejudice stemming from Hartford's alleged failure to comply with certain procedures set forth in the Plan or the 2005 CBA and Hartford has substantially complied with the minimum procedures set forth in the regulations, the court finds no reason to deviate from the modified abuse of discretion standard of review in evaluating the fiduciary's decision with regard to the plaintiff's claim for AD&D benefits. The court does note, however, that it is permitted to consider Hartford's compliance with ERISA's procedural and substantive requirements as a factor in ultimately evaluating the reasonableness of Hartford's decision under this heightened standard of review. See Carolina Care Plan, Inc. v. McKenzie, 467 F.3d 383, 387 (4th Cir. 2006).

## CONCLUSION

As the court has determined that a modified abuse of discretion standard of review will apply to its review of the defendant's decision to deny the plaintiff's claim for AD&D benefits under ERISA, the plaintiff will not be entitled to submit any additional evidence outside the administrative record in this case. Therefore, the plaintiff's motion for full and fair *de novo* hearing on the merits or opening of administrative record will be denied.

The Clerk of Court is hereby directed to send copies of this memorandum opinion and the accompanying order to all counsel of record.

ENTER: This 27th day of December, 2007.

_____
United States District Judge