CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

FEB 21 2008

JOHN F. CORCORAN, CLERK
BY:
    DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| CASSIDY ARNOLD, a Minor<br>By and Through Her Natural Mother<br>and Legal Guardian, TINA R. HILL,<br><br>Plaintiff,<br><br>v.<br><br>HARTFORD LIFE INSURANCE CO.,<br><br>Defendant. | Civil Action No. 7:07CV00093<br><br>**MEMORANDUM OPINION**<br><br>By: Hon. Glen E. Conrad<br>United States District Judge |

This case arises under the provisions of the Employee Retirement Income Security Act of 1974, 19 U.S.C. § 1001, et seq. ("ERISA"). The case involves the plaintiff's claim for mandatory and voluntary Accidental Death and Dismemberment ("AD&D") benefits from the defendant, Hartford Life Insurance Co., pursuant to the Volvo Welfare Benefit Plan, which included such coverage for the employees of Volvo Trucks North America, Inc., the employer of the plaintiff's deceased father, Arlys Arnold. This case is before the court on the parties' cross motions for summary judgment. For the reasons set forth below, the plaintiff's motion will be denied, and the defendant's motion will be granted.

## FACTUAL BACKGROUND

In connection with the plaintiff's Motion for Full and Fair De Novo Hearing On the Merits or Opening of Administrative Record, this court previously determined that Arlys Arnold was, in fact, covered by the terms of the Volvo Welfare Benefit Plan ("the Plan"). See Memorandum Opinion dated December 28, 2007. In conjunction with that Plan, the defendant, Hartford Life Insurance Co. ("Hartford"), issued an AD&D Policy ("the Policy") to Volvo

Trucks North America, Inc. ("Volvo"), the sponsor of both the Policy and the Plan. As the claims administrator under the Plan, Hartford has the discretionary power and authority to make factual findings and to construe the terms of the Policy for the purpose of reviewing and deciding claims under the Plan. Hartford acts as both the claims administrator and the insurer for this employee benefit plan.

Arlys Arnold, the plaintiff's father, worked for Volvo at its plant in Dublin from May 19, 2004 until the date of his death on April 17, 2005. The Policy covered the employees at the Dublin plant, including Arlys Arnold. The Policy includes two types of coverage: (1) a mandatory plan in which the principal sum is 55.5% of the employee's annual basic rate of pay and (2) a voluntary plan in which employees may apply for an additional principal sum of up to $300,000. The Policy provides as follows:

> If a Covered Person's injury results in any of the following losses within 365 days after the date of accident, we will pay the sum shown opposite the loss.
>
> . . .
>
> For Loss of:
> Life .................................................... The Principal Sum

See Defendant's Memorandum of Law in Support of Motion for Summary Judgment, Exhibit A to Exhibit 1 ("AR") p. HL 000020. Injury is defined in the Policy as follows:

> <u>Injury</u> means bodily injury resulting directly and independently of all other causes from accident which occurs while the Covered Person is covered under this policy. Loss resulting from:
>     a)      sickness or disease, except a pus-forming infection which occurs through an accidental wound; or
>     b)      medical or surgical treatment of a sickness or disease;
> is not considered as resulting from injury.

AR p. HL 000015. The term "accident" is not defined in the Policy. The Policy also contains the

2

following relevant exclusion:

> This policy does not cover any loss resulting from:
>
> 1.     intentionally self-inflicted Injury, suicide or attempted suicide, whether sane or insane; . . .

AR p. HL 000019. In addition to the mandatory benefits for which he was automatically eligible, Arlys Arnold requested the voluntary accidental death and dismemberment benefits available under the Policy in the amount of $300,000, and named the plaintiff as his primary beneficiary.

On April 17, 2005, Arlys Arnold attended a party in Max Meadows, Virginia. Upon leaving the gathering, Arlys Arnold drove his pickup to a grocery store located nearby. At the grocery store, he met James Dalton and apparently borrowed Dalton's motorcycle. After leaving the store on the motorcycle, Arlys Arnold left the road on a level curve, went down an embankment, and struck a tree. Arlys Arnold died at the scene of this crash. According to the death certificate issued by the Commonwealth of Virginia, the immediate cause of death was a closed head injury with cervical spine fracture. AR p. HL 000097.

The police crash report indicates that the crash took place at approximately 8:05 in the evening on a dry roadway. AR p. HL 000095. The weather was clear, although the light condition was noted as dusk. Id. There were no visible skid marks at the scene of the crash. Id. The police crash report also noted that Arlys Arnold had been drinking, resulting in impaired ability. Id. Furthermore, he had been traveling at 65 miles per hour at the time of the crash, although the speed limit was 55 miles per hour and the maximum safe speed, according to the police, was 35 miles per hour. Id.

On or about May 2, 2005, Tina Hill, the mother of Cassidy Arnold, completed claim

3

forms for AD&D benefits under the terms of the Policy on behalf of her daughter. During its evaluation of the plaintiff's claim, Hartford requested a copy of the toxicology report for Arlys Arnold. The certificate of analysis from the Division of Forensic Science indicated that Arlys Arnold's blood alcohol level was 0.18%. AR p. HL 000081.

On August 23, 2005, Hartford denied the plaintiff's claim, stating that Arlys Arnold's death was not due to an "injury" as defined by the Policy. In support of its decision, Hartford noted Arlys Arnold's blood alcohol level as indicated in the toxicology report and stated that:

> According to the Policy, we will pay a benefit when bodily injury results directly from an accident and independently of all other causes. We do not interpret the word "accident" to include circumstances where it is reasonably foreseeable that death will occur. Accidents, by nature, are unforeseeable events. It is a well known fact that driving while intoxicated can cause serious bodily injury or death. For instance, alcohol affects a person's ability to function, drive, or use machinery. It is our opinion that Mr. Arnold having ingested the quantity of alcohol that would result in a blood alcohol level of 0.18%, should have reasonably foreseen that such actions may result in a severe injury or death, even if death was not intended. The assumption of a known risk by the insured does not constitute an "Accident" under the terms of the Policy, and the result of that assumption, death in this circumstance, does not constitute a covered "injury" under the terms of the Policy.

AR p. HL 000063-64. Hartford also stated, as a second basis for its denial, that: "The 'self-inflicted' injury exclusion is applicable since Mr. Arnold's own volitional act of driving a motorcycle while legally intoxicated caused the injury." AR p. HL 000064. Hartford based its determination upon the following information included in the administrative record: the certificate of death from the Commonwealth of Virginia, the Commonwealth of Virginia police crash report, and the Division of Forensic Science certificate of analysis.

On September 28, 2005, Hill appealed Hartford's decision denying her claim on behalf of Cassidy Arnold, although she failed to submit any additional information to the defendant. After

conducting an independent review, Hartford denied Hill's appeal by letter dated October 31, 2005, stating again that Arlys Arnold's death was not an accident as defined by the Policy because of his level of intoxication and that, in any case, the self-inflicted injury exclusion would apply. AR p. HL 000049-51. On January 23, 2007, Hill, through counsel, submitted several additional pieces of evidence to Hartford in support of the plaintiff's claim for AD&D benefits. On January 29, 2007, Hartford returned the additional evidence to the plaintiff's counsel stating that she had already exhausted her administrative remedies and that it would accept no further evidence.

## PROCEDURAL HISTORY

The plaintiff filed the instant action claiming that Hartford based its denial upon insufficient evidence and that the denial was contrary to the terms of the Policy. The plaintiff also asserted a claim for breach of fiduciary duty. The magistrate judge, to whom matters relating to discovery in this case had been referred, previously permitted some limited discovery based upon the lack of discretion given to Hartford by the language of the Policy, the only governing document identified at that time. After Hartford failed to respond to the discovery requests, plaintiff filed a Motion for Full and Fair <u>De Novo</u> Hearing On the Merits or Opening of Administrative Record. Only then did Hartford present the plaintiff, as well as the court, with the Plan, which did confer discretion upon Hartford in its interpretation of the Policy language and determination of claim eligibility.

Although the plaintiff contended that the Policy, not the Plan, was the governing document, the court was ultimately constrained to hold that Arlys Arnold was a covered employee under the Plan and that the Plan language was controlling. Because the court may

consider evidence outside the administrative record only under the de novo standard of review, Quesinberry v. Life Ins. Co. of North America, 987 F.2d 1017, 1026-27 (4th Cir. 1993), the court proceeded to determine what standard of review would apply to this case. In determining the appropriate standard of review in such a case under ERISA, the court considered whether the language of the Plan granted Hartford discretion to determine the claimant's eligibility for benefits or to construe the terms of the plan. See Eckelberry v. ReliaStar Life Ins. Co., 469 F.3d 340, 343 (4th Cir. 2000). If a Plan confers such discretion, the standard is abuse of discretion. Id. If a Plan does not clearly grant such discretion, the standard of review would be de novo. See Feder v. Paul Revere Life Ins. Co., 228 F.3d 518, 524 (4th Cir. 2000). In this case, as previously noted, the court found that the Plan does confer discretion upon Hartford as the claims administrator. Therefore, the court proceeded to hold that the de novo standard of review does not apply in this case and that the plaintiff would not be permitted to present any additional evidence to the court. As a result, the court denied the plaintiff's motion and held that it would consider only the materials contained in the administrative record when examining the claim determination at issue here.

The parties have now filed cross motions for summary judgment based upon that administrative record, which has also been filed with the court. A hearing on the these motions took place on January 31, 2008, and the motions are now ripe for decision.

## STANDARD OF REVIEW

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is properly granted if "there is no genuine issue as to any material fact and the . . . moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). For a party's evidence to raise a genuine

issue of material fact to avoid summary judgment, it must be "such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In deciding a motion for summary judgment, the court must view the record in the light most favorable to the non-moving party. Terry's Floor Fashions, Inc. v. Burlington Industries, Inc., 763 F.2d 604, 610 (4th Cir. 1985). When a motion for summary judgment is supported by affidavits or other evidence as provided for in Rule 56, the opposing party may not rest upon the allegations in the pleadings and must, instead, present evidence showing that there is a genuine issue for trial. If the adverse party fails to present such evidence, summary judgment, if appropriate, should be entered. Fed. R. Civ. P. 56(e); Atkinson v. Bass, 579 F.2d 865, 866 (4th Cir.), cert. denied, 439 U.S. 1003 (1978).

## DISCUSSION

In this case, because Hartford acted under a conflict of interest as both the insurer and the claims administrator under the Plan, the modified abuse of discretion standard of review will apply to the court's review of the fiduciary's decision. See Carolina Care Plan, Inc. v. McKenzie, 467 F.3d 383, 386 (4th Cir. 2006). Under this modified abuse of discretion standard of review, a court must uphold the decision of the fiduciary so long as that decision is reasonable. Carolina Care, 467 F.3d at 387. The decision of a claims administrator may be reasonable "if it is the result of a deliberate, principled reasoning process and if it is supported by substantial evidence." Stup v. UNUM Life Ins. Co. of America, 390 F.3d 301, 307 (4th Cir. 2004) (citing Bernstein v. CapitalCare, Inc., 70 F.3d 783, 788 (4th Cir. 1995)). Where there is a conflict of interest, however, "the more incentive for the administrator or fiduciary to benefit itself by a certain interpretation of benefit eligibility or other plan terms, the more objectively reasonable

7

the administrator or fiduciary's decision must be and the more substantial the evidence must be to support it." Stup, 390 F.3d at 307.

In assessing the reasonableness of a claims determination, a court must consider the following nonexclusive factors:

> (1) the language of the plan; (2) the purposes and goals of the plan; (3) the adequacy of the materials considered to make the decision and the degree to which they support it; (4) whether the fiduciary's interpretation was consistent with other provisions in the plan and with earlier interpretations of the plan; (5) whether the decision making process was reasoned and principled; (6) whether the decision was consistent with the procedural and substantive requirements of ERISA; (7) any external standard relevant to the exercise of discretion; and (8) the fiduciary's motives and any conflict of interest it may have.

Carolina Care, 467 F.3d at 387 (citing Booth v. Wal-Mart Stores, Inc. Assocs. Health & Welfare Plan, 201 F.3d 335, 342-43 (4th Cir. 2000)). The plaintiff contends that the level of deference in a case such as this, where the claims administrator is also the insurer and stands to gain financially as the result of an adverse determination, may be slight or even none. The plaintiff notes that in Bailey v. Blue Cross & Blue Shield of Virginia, 67 F.3d 53, 57 (4th Cir. 1995), the Court, when discussing the total conflict of interest involved in that case, cited Brown v. Blue Cross & Blue Shield, 898 F.2d 1556, 1564 (11th Cir. 1990) and quoted the case as follows: "When the members of a tribunal - for example, the trustees of a pension fund - have a serious conflict of interest, the proper deference to give may be slight, even zero; the decision if wrong may be unreasonable." While the court agrees that the level of deference in this case should be lessened to account for Hartford's conflict of interest, the court finds that it should exercise at least some level of deference. The fiduciary in Carolina Care Plan, supra, also had a total conflict of interest, and the Court nevertheless held that it would examine the reasonableness of the claim decision with regard to the factors set forth in Booth, supra. 467 F.3d at 386-87.

8

In this case, the primary reason given by Hartford for its denial of the plaintiff's claim for AD&D benefits was the fact that Arlys Arnold's death was not due to an "Injury" as defined by the Policy because it was not an "accident." As previously noted, the Policy does not define "accident." In denying the plaintiff's claim, Hartford has essentially defined "accident" as an event where it is not reasonably foreseeable that death will occur. In this case, because Arlys Arnold was driving a motorcycle at a time when his blood alcohol level was 0.18%, Hartford contends that death <u>was</u> a reasonably foreseeable consequence of his actions, and that his injuries were, therefore, not the result of an "accident."

Hartford's interpretation of its Policy language, in this case the definition of the term "accident," appears to be consistent with the decision in <u>Eckelberry v. Reliastar Life Ins. Co.</u>, 469 F.3d 340 (4th Cir. 2006). In <u>Eckelberry</u>, Earl Eckelberry crashed his vehicle into the rear of a parked trailer in the early morning hours in a single vehicle accident. 469 F.3d at 342. His blood alcohol level was 0.15%, 50% higher than the legal limit in West Virginia of 0.10%. <u>Id.</u> After his beneficiary filed a claim for AD&D benefits, the claims administrator denied those benefits finding that, because Eckelberry's blood alcohol was 50% higher than the legal limit, his injuries did not result from an accident because they were not unexpected. <u>Id.</u> The policy at issue in that case defined "accident" as "an unexpected and sudden event which the insured does not foresee." <u>Id.</u>

Although the district court had reversed the determination of the claims administrator, the United States Court of Appeals for the Fourth Circuit upheld it under a modified abuse of discretion standard. <u>Id.</u> at 343. The Court specifically adopted the framework laid out in <u>Wickman v. Northwestern Nat'l Ins. Co.</u>, 908 F.2d 1077 (1st Cir. 1990) to clarify the meaning of

9

"unexpected." Id. Under Wickman, after determining that an insured did not subjectively expect his actions to result in injury or death, a court proceeds to an "'objective analysis,' and consider[s] 'whether a reasonable person, with background and characteristics similar to the insured, would have viewed the injury as highly likely to occur as a result of the insured's intentional conduct.'" Id. at 344 (quoting Wickman, supra, 908 F.2d at 1088). The Court proceeded to hold that "[w]hether the test is one of high likelihood, or reasonable foreseeability, federal courts have found with near universal accord that alcohol-related injuries and deaths are not 'accidental' under insurance contracts governed by ERISA." Id. at 344-45 (citing Cozzie v. Metro. Life Ins. Co., 140 F.3d 1104, 1109-10 (7th Cir. 1998); Weatherall v. Reliastar Life Ins. Co., 398 F. Supp. 2d 918, 924 (W.D. Wis. 2005); Mullaney v. Aetna U.S. Healthcare, 103 F. Supp. 2d 486, 494 (D.R.I. 2000); Sorrells v. Sun Life Assurance Co., 85 F. Supp. 2d 1221, 1232-35 (S.D. Ala. 2000); Walker v. Metro. Life Ins. Co., 24 F. Supp. 2d 775, 782 (E.D. Mich. 1997); Schultz v. Metro. Life Ins. Co., 994 F. Supp. 1419, 1422 (M.D. Fla. 1997); Nelson v. Sun Life Assurance Co., 962 F. Supp. 1010, 1012 (W.D. Mich. 1997); Miller v. Auto-Alliance Int'l, Inc., 953 F. Supp. 172, 176-77 (E.D. Mich. 1997); Cates v. Metro. Life Ins. Co., 14 F. Supp. 2d 1024, 1027 (E.D. Tenn. 1996), aff'd 149 F.3d 1198 (6th Cir. 1998); Fowler v. Metro. Life Ins. Co., 938 F. Supp. 476, 480 (W.D. Tenn. 1996)). But see, West v. Aetna Life Ins. Co., 171 F. Supp. 2d 856 (N.D. Iowa 2001) (holding that it was not foreseeable that death would result when the insured's blood alcohol level was .203%).

The Court noted that every state criminalizes drunk driving and that, because the hazards of drinking and driving are widely known and publicized, an insured "should have known that driving while intoxicated was highly likely to result in death or bodily harm." Id. at 345. The

10

Court elaborated further as follows:

> By choosing to drive under circumstances where his vision, motor control, and judgment were likely to be impaired, the insured placed himself and fellow motorists in harm's way. To characterize harm flowing from such behavior as merely "accidental" diminishes the personal responsibility that state laws and the rules of the road require.

Id. at 346. Nevertheless, the Court noted that it was not adopting a per se rule that any car crash involving drunk driving could never be an accident. Id. at 347. Instead, a plan fiduciary must "assess all of the facts and circumstances attending a claim, afford the insured adequate opportunity to address the causes and circumstances surrounding any occurrence, and make a reasoned, principled assessment supported by substantial evidence." Id.

Hartford contends that the information available to it when it made its claims determination indicated that Arlys Arnold was operating the motorcycle on the date of his death at an excessive speed, that the day was clear and the roadway dry, and that his blood alcohol level was 0.18%, which is more than double the legal limit of 0.08% in Virginia. See Va. Code Ann. § 18.2-266(i). Therefore, citing Eckelberry, Hartford argues that its determination to deny death benefits in this case was reasonable because Arlys Arnold's death was reasonably foreseeable given his level of intoxication.

In her thoughtful response, the plaintiff attempts to distinguish Eckelberry, noting that the Policy at issue here includes an alcohol/intoxication exclusion with regard to seat belt coverage, but not with regard to AD&D coverage, and contending that Hartford's broad definition of "accident" is inconsistent with that exclusion and would render the exclusion superfluous. This argument is pertinent to Carolina Care/Booth factor four, which directs the court to consider "whether the fiduciary's interpretation was consistent with other provisions in the plan." The

11

relevant exclusion to the Policy's seat belt coverage is as follows:

> This Seat Belt Coverage does not cover any loss if the Covered Person:
> a) is under the influence of any intoxicant, excitant, hallucinogen, or any narcotic or other drug, or similar substance as verified in the police accident report (unless administered under the advice of a physician); and
> b) is operating the Automobile.

The exclusions from AD&D coverage include injuries sustained only while voluntarily taking drugs which federal law prohibits dispensing without a prescription, including sedatives, narcotics, barbiturates, amphetamines, or hallucinogens, unless the drug is taken as prescribed or administered by a licensed physician. Intoxicants, such as alcohol, however, are not included within the AD&D exclusions. According to the plaintiff, the specific exclusion for intoxicants under the seat belt coverage portion of the Policy would not be necessary if the term "accident" is understood not to include a situation where the covered person is legally intoxicated. Therefore, the plaintiff concludes that Hartford's interpretation has created an ambiguity in the Policy language which should be construed against it as the drafter of that Policy.

    While the court finds that the plaintiff's well-reasoned argument is logically compelling, the court is nevertheless constrained to agree with Hartford that no ambiguity has been created in the Policy simply because the exclusions are different between the AD&D and seat belt coverages and that there is no inherent inconsistency between Hartford's interpretation of "accident" in the Policy and the intoxicant exclusion from seat belt coverage. For the latter exclusion to apply, a covered person would simply have to be under the influence of alcohol, not necessarily legally intoxicated. Under the defendant's and the Fourth Circuit's interpretation of the term "accident" in the context of a drunk driving accident, only a situation in which a covered person was injured while driving and legally intoxicated would be excluded from the definition

12

of an accident as a reasonably foreseeable event. Therefore, the court finds that Hartford's interpretation of the term "accident" is not inconsistent with other provisions in the Policy. Furthermore, the court finds and concludes that the circumstances surrounding the events which led to the death of Arlys Arnold are factually similar to those involved in Eckelberry, and that case appears to be controlling here. Nevertheless, as the rule in Eckelberry is not a per se rule, the court will proceed to consider the remaining applicable Carolina Care/Booth factors in evaluating the reasonableness of Hartford's decision in this case.

In making its determination to deny the plaintiff's claim for AD&D benefits, the defendant reviewed the certificate of death from the Commonwealth of Virginia, the Commonwealth of Virginia police crash report, and the Division of Forensic Science certificate of analysis. The police crash report indicated that Arlys Arnold was impaired due to alcohol consumption at the time of his death and the Division of Forensic Science certificate of analysis stated that his blood alcohol level was 0.18%. The plaintiff now asserts that Hartford's denial of benefits was unreasonable because there was a lack of sufficient chain of custody evidence for the blood sample taken from Arlys Arnold. Thus, the plaintiff contends, there is no evidence that the blood sample originated from the insured's circulatory system.

The certificate of analysis signed by James J. Kahlman, Jr., Ph.D., a forensic toxicologist for the Department of Criminal Justice Services, Division of Forensic Science, identifies one vial of blood from Arlys Arnold and indicates that it contained 0.18% ethanol by volume. AR p. HL 000081. Nevertheless, the plaintiff contends that there is no certificate of blood withdrawal pursuant to Va. Code Ann. § 18.2-268.6, which requires the completion of such a certificate by the person taking the blood sample for purposes of conviction for the offense of driving while

Case 7:07-cv-00093-GEC-mfu Document 44 Filed 02/21/08 Page 13 of 16 Pageid#: 1321

intoxicated. The plaintiff also argues that Hartford should not be permitted to avail itself of state actions, including the enactment of DUI laws and the collection and testing of bodily fluids, which were designed for the regulation of certain criminal behavior, in this civil context when it failed to properly verify the required safeguards.

The court finds that the plaintiff's contention is without merit. The section referred to by the plaintiff, Va. Code Ann. § 18.2-268.6, applies only in the criminal context. Under a substantial evidence standard, Hartford was not required to verify any chain of custody evidence with regard to the blood sample taken from Arlys Arnold. Hartford received information related to the crash and to the blood alcohol content of Arlys Arnold's blood. It was entitled to rely upon this information provided by officials of the Commonwealth. In fact, all of the evidence in the administrative record supports the proposition that Arlys Arnold had been drinking and was, in fact, legally intoxicated at the time of the crash.

The plaintiff next points to certain internal discussions between Hartford claims staff and internal legal personnel in which the parties discussed the lack of a specific alcohol exclusion in the Policy and whether Hartford could defend a denial based upon foreseeability. The plaintiff contends that these discussions suggest an attempt to avoid liability for her claim. The plaintiff also contends that the fact that Hartford sought advice from its legal department only <u>after</u> initially concluding it could deny the claim due to the insured's blood alcohol level is inconsistent with Hartford's assertion that it was attempting to determine whether the insured's death was reasonably foreseeable and not an "accident" as defined in the Policy. The court finds, however, that these internal claims discussions indicate only that Hartford was engaged in a reasonable internal process to discuss the merits of the plaintiff's claim for AD&D benefits and

14

the legal implications of a denial based upon foreseeability. There is simply nothing in the internal evaluation and analysis to suggest that the reasonableness of Hartford's decision making process was compromised.

The plaintiff next points to the procedural irregularities she previously noted in her motion for de novo review or to open the administrative record in the context of Carolina Care/Booth factor six, i.e., whether the decision was consistent with the procedural and substantive requirements of ERISA. These issues ostensibly include Hartford's failure to notify the plaintiff of the optional voluntary appeals process, to grant her the full 180 day appeal period, and to accept additional information for her appeal. As the court previously held, however, only the failure to provide notice of the additional voluntary appeal could possibly be construed as a violation of the ERISA regulations. Furthermore, the court previously found that the plaintiff failed to demonstrate prejudice from this possible procedural error. Therefore, the court concludes that there are no procedural irregularities which could indicate that Hartford's decision is inconsistent with the requirements of ERISA.

## CONCLUSION

After considering the relevant factors under Carolina Care and Booth, supra, as well as the holding of the Fourth Circuit in Eckelberry, supra, the court finds that Hartford's decision to deny the plaintiff's claim for AD&D benefits was reasonable and was the result of a reasoned and principled decision making process. Under the facts of this case, Arlys Arnold's death was reasonably foreseeable given that his alcohol consumption placed him well above the legal limit at the time of the crash that ultimately led to his death. As a result, and in the absence of any other reasonable explanation for the crash, it was reasonable for Hartford to determine that Arlys

15

Arnold's death was not an "accident" as that term is used in the relevant AD&D Policy.[1]

Therefore, the defendant's motion for summary judgment will be granted, and the plaintiff's motion for summary judgment will be denied.

The Clerk of Court is hereby directed to send certified copies of this memorandum opinion and the accompanying order to all counsel of record.

ENTER: This 21st day of February, 2008.

/s/ Glen Conrad
United States District Judge

---

[1] Based upon the court's holding, it is not necessary to consider whether the plaintiff's claim could reasonably be denied based upon the self-inflicted injury exclusion.

16